CHARLEY WOLFE v. THE STATE.

No. 1496. Decided January 26, 1898.

**1. Local Option—Evidence.**

See the opinion for facts stated, which the court hold amply sufficient to support a conviction for a violation of local option.

**2. Same—Principal—Charge of the Court, as to "Keeping Watch."**

On a trial for violating local option, where the evidence showed that defendant was employed in the establishment to look after and keep a check on the sales made by the sellers, who were all negroes, and that on the occasion in question he met the several parties, who were entering the establishment to get drinks, and refused admittance to one of them because he had previously "been giving people away," that is, as a witness before the grand jury; Held, the evidence authorized a charge by the court as to a principal offender "keeping watch."

APPEAL from the County Court of Hunt. Tried below before Hon. W. H. RAGSDALE, County Judge.

Appeal from a conviction for violation of local option; penalty, a fine of $100 and sixty days confinement in the county jail.

The opinion states the case.

[No brief on file for appellant.]

*Mann Trice*, Assistant Attorney-General, for the State.

DAVIDSON, JUDGE.—Appellant was convicted of violating the local option law, and his punishment assessed at a fine of $100 and sixty days confinement in the county jail. The judgment of conviction was entered March 3, 1897.

It is contended that the evidence does not support the conviction. We are of opinion that it does. The witnesses Fisk and Aaron testify that they and one M. D. Abbott went into a place in the rear of a restaurant, where Aaron purchased beer, and treated the crowd. The witness Aaron testified: "When we got to the door entering the barroom from the restaurant, the defendant met us, and, pointing to M. D. Abbott, said, 'That man can't come in here.' All of us went in, except Abbott. I bought the beer, and treated the crowd." Cross-examined, he said: "A negro waited on us. I paid the negro for the beer. Never noticed the defendant while we were at the bar, drinking. He may have stepped out into the restaurant." Fisk testified: "Jim Aaron treated me and others. It was beer, and was intoxicating. The room where we got the beer had a bar, and was fitted up with saloon fixtures. When we started to enter the room, the defendant said, 'That man can't come in here.' I looked to see whom he meant, and saw that Abbott had stopped outside the barroom in the restaurant." He testified, as did Aaron, that they were waited on by the negro. Abbott testified "that he went with the parties on the invitation of Aaron to get a drink. As we approached from the restaurant to the little room, defendant met us, and remarked, 'That man can't come in here. He has been giving people away.' I took these remarks to be directed to myself, as I was the only one he was looking at, and he stopped in the door ahead of me. I stepped back, towards the front of the restaurant, and sat down. Defendant stood about the door entering the barroom. The door was standing about half open. Some time before this, I had been subpoenaed before the grand jury, and questioned under oath with reference to violations of the local option law. I had been forced in this way to give some parties away." On cross-examination he said: "I think the defendant stepped in the little room after the other parties went in. I know he lingered around the door, and could see the bar. He could see me from where he stood. After I sat down I could not see the bar." The defendant testified in his own behalf as to these parties going to the place mentioned, but denied selling them anything, and further denied having any interest in the business. He testified: "I

saw Abbott there. I told him he could not come in; didn't want him in there. I was employed to stay there by Joe Kirby, the owner of the business. I was not employed to sell anything. Don't know who did the selling; never asked their names. I worked there about two months. Several parties were there making sales while I was employed. They were all negroes. I never hired them. My duties were to keep a check on the sales. I didn't pay any attention to what the negroes sold. Only counted the money in the cash drawer at night. I generally got there about 7 or 8 o'clock in the morning, and stayed until the house was closed at night. They kept ginger ale and cider for sale there. Kept whisky to sell on prescription. Did not keep beer. The cider looked like beer. I stayed around there, and read, etc., during the day."

That the sale was made is shown by the State's testimony beyond any controversy. It is not denied that it was beer, as testified by all the witnesses, except the defendant's statement that beer was not kept there. He seems to have had control of the business. If beer was sold as testified by the State's witnesses, then it was an illegal sale. Under the facts of this case, the defendant would be a principal. In the motion for a new trial, the charge of the court is criticised, because it submits the law of principals in regard to keeping watch, sales by aiding and encouraging the parties actually selling, etc.; the portion criticised being that with reference to keeping watch, etc. If there had been an exception reserved to the action of the court in giving this charge, we would still sustain the action of the court, because, under the testimony of Abbott and the defendant, he prohibited Abbott from going in, because he had been giving them away in regard to sales, and then stood in the door, so as to prevent Abbott entering the place where the liquor was sold. No errors appearing, the judgment is affirmed.

*Affirmed.*

[NOTE.—Appellant's motion for rehearing was overruled without a written opinion.—Reporter.]